IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JOHN GAGLIARDI, SOON-RYE          )
VANGELDER,                        )
                                  )
            Plaintiffs,           )
                                  )
      v.                          )      Civil Action No. 06-20
                                  )
                                  )
RICHARD CLARK, BOROUGH MGR.;      )
BOROUGH OF JEFFERSON HILLS, a     )
municipal corporation; BOROUGH OF )
JEFFERSON HILLS SEWER             )
AUTHORITY; PENNSYLVANIA           )
AMERICAN WATER COMPANY, a         )
Pennsylvania business corporation; all )
parties sued in both their official and private )
capacities,                       )
            Defendants.           )

MEMORANDUM ORDER

CONTI, District Judge.

        Plaintiffs John Gagliardi ("Gagliardi") and Soon-Rye Vangelder ("Vangelder," and

together with Gagliardi, "plaintiffs") filed this civil action alleging various federal constitutional

claims under 42 U.S.C. § 1983, claims under the Fair Debt Collection Practices Act, 15 U.S.C. §

1692, claims under 18 U.S.C. §§ 1001 and 1341, state constitutional claims under the

Pennsylvania Constitution, and contract and tort claims governed by state law.

        Pending before the court are motions filed pursuant to Federal Rule of Civil Procedure

12(b)(6) by defendants Richard Clark, Borough Manager ("Clark"); the Borough of Jefferson

Hills (the "borough"); the Borough of Jefferson Hills Sewer Authority (the "sewer authority")

(collectively, the "borough defendants") (Doc. No. 3) and by defendant Pennsylvania American

Water Company (the "water company") (Doc. No. 10).  Defendants seek to dismiss plaintiffs'

complaint in its entirety for failure to state a claim.  The court finds that with respect to the

federal claims, plaintiffs have failed to state a claim upon which relief may be granted.  The court

will dismiss some of these claims without prejudice to plaintiffs' right to file an amended

complaint within thirty (30) days of the entry of this order; provided, that plaintiffs can meet the

standards of Rule 8 of the Federal Rules of Civil Procedure.  Plaintiffs if they file an amended

complaint must allege facts sufficient to outline the elements of their claims or to permit

inferences to be drawn that these elements exist and may not rely upon mere "bald assertions" or

"legal conclusions."  <u>See</u> <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997)

("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a

motion to dismiss.").  The court will dismiss other claims with prejudice because leave to amend

with respect to those claims would be futile.  The court will not address the remaining state law

claims at this time because the court declines to retain jurisdiction over those claims.


### *Facts Accepted as True for the Purpose of Deciding the Motion*

Plaintiff Gagliardi is a Pennsylvania citizen whose address is located at 191 Wall Road in

the USI Industrial Park which he operates in Jefferson Hills Borough, Allegheny County,

Pennsylvania.  Plaintiffs' Complaint ("Comp.") ¶1.[1]  Plaintiff Vangelder is a permanent United

---

[1]The complaint alleges that Gagliardi's address is at 191 Wall Road, but the complaint
and the pleadings in the case do not make clear whether Gagliardi owns this property or the
adjacent property at 141 Wall Road, or is otherwise responsible for these properties in some
respect.  Compl. ¶1 ("Gagliardi . . .whose address is at 191 Wall Rd., in the USI Industrial Park
which he operates. . . .");  Compl. Exhibit ("Ex.")(Doc. No. 1-1) at 16.  Indeed, the ownership,
subdivision, transfer, and tax liabilities of that property and the adjacent parcel of land appear to
be the subject of litigation which was pending, and may be ongoing, in the Allegheny Court of

States resident alien of Korean ancestry who resides at 191 Wall Road.  Id. ¶2.  Plaintiff

Vangelder receives social security benefits for her disabled condition.  Id.  Defendant Clark is

Manager for the borough, which is a municipal corporation and a political subdivision of the

Commonwealth of Pennsylvania.  Id.¶ 3.  Clark, as Manager for the borough, oversees the

defendant sewer authority.  Id.¶ 4.  The sewer authority is an administrative entity entirely

directed by the Borough Municipal Corporation and thus subject to Clark's day-to-day

managerial authority.  Id.  ¶19.  Defendant water company is a private Pennsylvania business

corporation.  Id. ¶5.

On December 30, 2005, the Allegheny Court of Common Pleas issued a memorandum

opinion and order overruling preliminary objections and directing defendants to answer in a case

commenced by Gagliardi against Allegheny County, the borough, and the School District of

West Jefferson Hills, Docket No. GD03-3504, concerning certain property descriptions and tax

assessments involving the property at issue in this case and the adjacent parcel.  Id. ¶12; Compl.,

Ex. (Doc. No. 1-1) at 19-21 ("State Memorandum Order").  The state trial court indicated that

sorting out the property description would be "cumbersome," and thus the issues in that case

would be best addressed through discovery rather than by preliminary objections.  State

Memorandum Order at 19-21.  Plaintiff alleges that within forty-eight hours of receiving the

State Memorandum Order, the borough, acting through the sewer authority, caused water utility

service to be terminated at 191 Wall Road without any warning or notice.  Id. ¶13.[2]

_____

Common Pleas at the time this civil action was commenced.  See Compl. Ex. (Doc. No. 1-1) at
19-21, 22-28.

[2]Plaintiffs allege that the water company was contractually obligated to follow the
borough's directive. Compl. ¶ 28.  The water company in its motion to dismiss agrees with this

On Friday, January 6, 2006, Vangelder discovered that the water pressure flow was virtually non-existent in Gagliardi's apartment at 191 Wall Road.  Id. ¶14.[3]  After determining that the water flow problem was not attributable to problems at 191 Wall Road, plaintiffs notified the water company by telephone about the lack of water pressure and flow.  Id.

A water company employee arrived at the property at 191 Wall Road and discovered that the valve controlling water service to the property was almost completely closed.  Id. ¶ 15.  When that water company employee opened the main service valve, the water pressure and flow returned at full force and volume.  Id. ¶16.[4]  Plaintiffs, however, allege that within twenty minutes of reporting to the water company that he had re-opened the valve, the employee telephoned Gagliardi and notified Gagliardi that he had been ordered by the water company to shut off the water again.  Id. ¶17.

Gagliardi was alarmed and called the water company.  Id. ¶18.  Gagliardi learned that the sewer authority had ordered the water company to shut off the water flow.  Id.  The water company acknowledged to Gagliardi that it normally sent termination notices to its customers but that because the sewer authority had demanded that the water company immediately disconnect service the water company promptly complied without resorting to notice or other procedures.

characterization, noting that it is contractually obligated pursuant to a contract between the water company and the borough which is recorded with and approved by the Pennsylvania Utility Commission pursuant to the laws of the Commonwealth of Pennsylvania. Water company's Mot. to. Dismiss at 2.

[3]Plaintiffs allege that prior to this incident water pressure and flow had been diminishing for months at 191 Wall Road to the extent that it would take half of an hour to refill a flushed toilet.  Id. ¶14.

[4]Plaintiffs allege that comparable full force and volume had not been seen for months at 191 Wall Road.  Id. ¶16.

Id. ¶20.  Plaintiffs allege that the crisis was timed to occur early on a Friday afternoon when borough officers, employees, and agents would not be available for meaningful contact by Gagliardi.  Id. ¶21.  Plaintiffs allege that Clark and the sewer authority historically have been aware of utility service issues at 191 Wall Road.  Id. ¶22.  Plaintiffs allege that Gagliardi learned from a person at the water company that same day that Clark personally had given the water company the order to turn off water service at 191 Wall Road and had ordered that the water service was to remain off.  Id. ¶23.

Plaintiffs allege that Gagliardi made several unsuccessful attempts to contact Clark by telephone concerning the shut-off order.  Id. ¶24.  Gagliardi similarly was unsuccessful in his attempts to speak to any other borough officials that day.  Id.  Gagliardi unsuccessfully attempted, for example, to reach the sewer authority manager, but was told the sewer authority manager was on vacation in Florida.  Id.

Plaintiffs allege that Vangelder is a totally innocent third party to the impasse between Gagliardi, the sewer authority, and the water company; that she is responsible for none of the legal disputes between Gagliardi, the borough, the sewer authority, and the water company; and that she has suffered a total loss of water usage which has compounded her physical ailments.  Id. ¶25.  Moreover, both Gagliardi and Vangelder have suffered compound physical ailments including severe headache pain and somatic discomfort and Gagliardi is an elderly person beset with a variety of cardiac, diabetic, and arthritic conditions which are aggravated when accompanied by a denial of access to water.  Id. ¶¶25-26, 51.

### Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint.  Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In deciding a motion to dismiss, the court is not opining on whether the plaintiff will be likely to prevail on the merits.  Rather, when considering a motion to dismiss, the court accepts as true all factual allegations in the complaint and views them in a light most favorable to the plaintiff.  U.S. Express Lines Ltd. V. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).  "The pleader is required to 'set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that these elements exist.'"  Kost, 1 F.3d at 183 (quoting 5A CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (2d. ed. 1990)).  A motion to dismiss pursuant to Rule 12(b)(6) should be granted only if, accepting as true the facts alleged and all reasonable inferences that can be drawn therefrom, there is no reasonable reading upon which the plaintiff may be entitled to relief.  Vallies v. Sky Bank, 432 F.3d 493, 494 (3d Cir. 2006).  Moreover, the court is under a duty to examine the complaint independently to determine if the factual allegations set forth could provide relief under any viable legal theory.  Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

While this court is mindful that *pro se* plaintiffs are not held to as high of a standard as litigants that are represented by counsel, a *pro se* plaintiff must still plead the essential elements of his or her claim and is not excused from conforming to the standard rules of civil procedure. McNeil v. United States, 508 U.S. 106, 113 (1993) ("[W]e have never suggested that procedural rules in ordinary civil litigation should be interpreted so as to excuse mistakes by those who proceed without counsel . . . ."); Haines v. Kerner, 404 U.S. 519, 520 (1972).  Thus, plaintiffs, even though they are *pro se*, must set forth sufficient information that would allow the court to

infer that, accepting plaintiffs' allegations as true, defendants violated plaintiffs' federal rights. Kost 1, F.3d at 183.

The Federal Rules of Civil Procedure do not require the plaintiff to set out in his complaint the specific facts that entitle him to relief, but rather only a "short and plain statement of the claim." Fed. Rule Civ. P. 8(a)(2).  "Bald assertions" or "legal conclusions," however,  are not required to be credited in making the determination as to whether or not there is a set of facts on which to determine that a claim has been stated.  See Morse, 132 F.3d at 906 ("[A] court need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss.").

Where the plaintiff's complaint pleads facts beyond the requirements of Rule 8, his claim may be subject to dismissal if the specific facts alleged fail to provide relief under any viable legal theory.  Camero v. Kostos, 253 F.Supp. 331, 338 (D.N.J. 1966) (granting motion to dismiss where plaintiff's complaint pled facts demonstrating defendant was subject to immunity).  In addition, if the plaintiff's complaint does plead specific facts, those facts, taken as true for purposes of deciding the motion to dismiss, may create a defense to his claim.  Id.; see ALA, Inc. V. CCAir, Inc., 29 F.3d 855, 859 (3d Cir. 1994); 5 Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1226 (3d ed. 2004).  In fact, where the plaintiff "chooses to plead particulars, and they show that he has no claim, then he is out of luck – he has pleaded himself out of court."  Jefferson v. Ambroz, 90 F.3d 1291, 1296 (7th Cir. 1996).

Exhibits may be considered in deciding the motion to dismiss because "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case . . . may be considered by

7

the district court without converting the motion into one for summary judgment." 5B CHARLES
A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at 376, 382-92
(3d ed. 2004). Specifically, without converting the motion into a motion for summary judgment,
the court may consider "documents which are attached to or submitted with the complaint, as
well as legal arguments presented in memorandums or briefs and arguments of counsel,"
"documents whose contents are alleged in the complaint and whose authenticity no party
questions, but which are not physically attached to the pleading," and "[d]ocuments that the
defendant attaches to the plaintiff's complaint and are central to the claim." Pryor v. National
Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see U.S. Express Lines Ltd. v.
Higgins, 281 F.3d 383, 388 (3d Cir. 2002) ("Although a district court may not consider matters
extraneous to the pleadings, 'a document integral to or explicitly relied upon in the complaint
may be considered without converting the motion to dismiss into one for summary judgment.'")
(quoting In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)).


*Discussion*

**I. Federal Constitutional Claims Under 42 U.S.C. § 1983**

Plaintiffs assert multiple constitutional claims against defendants for violations of 42
U.S.C. § 1983. Section 1983 imposes civil liability upon any person who, while acting under
color of state law, deprives another individual of rights, privileges and immunities secured by the
Constitution or federal law. Doe v. Delie, 257 F.3d 309, 314 (3d Cir. 2001). Section 1983 "does
not create any new substantive rights, but it provides a remedy for the violation of a federal
constitutional or statutory right conferred elsewhere." Id. (citing Baker v. McCollan, 443 U.S.

137, 144 n. 3 (1979)).  To prevail on a claim brought pursuant to section 1983, a plaintiff must

show that (1) the defendant or defendants acted under color of law; and (2) their actions deprived

the plaintiff of rights secured by the Constitution or federal statutes.  Anderson v. Davila, 125

F.3d 148, 159 (3d Cir. 1997) (citing Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993)).[5]

         In this case, some defendants allege defendant-specific issues concerning the section 1983

claims.  The water company, for example, argues that it is not a state actor and could not have

acted under color of law and therefore plaintiffs cannot state a claim against it pursuant to section

1983.  Clark argues that he is entitled to qualified immunity.  The borough argues that it cannot

be held liable under a theory of supervisory liability.  The court first will address whether

plaintiffs generally can state a claim under the various constitutional provisions asserted and the

court only if necessary will reach defendant-specific issues such as state action and qualified

immunity.[6]

---

[5]Plaintiffs additionally allege violations of several rights secured by the Pennsylvania
Constitution and group these claims along with their federal constitutional claims.  Section 1983
provides a remedy for the violation of a federal constitutional or statutory rights.  See 42 U.S.C. §
1983 ("Every person who, under color of [law], subjects, or causes to be subjected, any citizen of
the United States or other person . . . to the deprivation of any rights, privileges, or immunities
secured by the Constitution and laws, shall be liable to the party injured . . . ."); see also Doe, 257
F.3d at 314 (Section 1983 "provides a remedy for the violation of a federal constitutional or
statutory right conferred elsewhere"); Kaucher v. County of Bucks, 455 F.3d 418, 423 (3d Cir.
2006)("Section 1983 provides remedies for deprivations of rights established in the Constitution
or federal laws.").

[6]If the court does not reach these issues because the court dismisses all of plaintiffs'
federal constitutional claims on other grounds, the court is in no way expressing an opinion as to
whether these immunities and defenses apply and whether they are meritorious.  The court,
instead, is seeking to address the multitude of claims and issues raised by plaintiffs' complaint
and defendants' motions in the most efficient manner possible.

**A. The Procedural Due Process Claim**

Plaintiffs argue that defendants violated their rights to due process secured by the Fifth and the Fourteenth Amendments to the United States Constitution by shutting off their water service without fair notice and an opportunity to defend against the termination of water service. Compl. ¶34. Plaintiffs have plead facts showing that defendants are local government entities and officials and a private company. The Fifth Amendment's due process guarantee applies only to the actions of the federal government. Plaintiffs, therefore, cannot state a claim for a violation of procedural due process guaranteed by the Fifth Amendment. Plaintiffs' due process claim, however, can be analyzed pursuant to the Fourteenth Amendment. In response to this allegation of denial of procedural due process, both the borough defendants and the water company argue that plaintiffs cannot state a claim for failure to provide due process largely because plaintiffs failed to avail themselves of processes available under the law or make a showing that they are patently inadequate.

The Fourteenth Amendment to the United States Constitution forbids a state from depriving persons of life, liberty, or property without due process of law. Alvin v. Suzuki, 227 F.3d 107, 116 (3d Cir. 2000)(citing U.S. CONST. amend. XIV, §1). To state a claim under section 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and (2) the procedures available to him did not provide "due process of law." Hill v. Borough of Kutztown, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing Alvin, 227 F.3d at 116).

The United States Court of Appeals for the Third Circuit has made clear that "[i]n order

to state a claim for failure to provide due process, a plaintiff must have taken advantage of the processes that are available to him or her, unless those processes are unavailable or patently inadequate." Alvin, 227 F.3d at 116. "[A] state cannot be held to have violated due process requirements when it has made procedural protection available and the plaintiff has simply refused to avail himself of them." Id. (quoting Dusanek v. Hannon, 677 F.2d 538, 543 (7th Cir.1982)(internal quotations omitted) and citing Bohn v. County of Dakota, 772 F.2d 1433, 1441 (8th Cir.1985)). "A due process violation 'is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.'" Id. (quoting Zinermon v. Burch, 494 U.S. 113, 126 (1990)). "If there is a process on the books that appears to provide due process, the plaintiff cannot skip that process and use the federal courts as a means to get back what he wants." Id. (citing McDaniels v. Flick, 59 F.3d 446, 460 (3d Cir.1995); Dwyer v. Regan, 777 F.2d 825, 834-35 (2d Cir.1985), modified on other grounds, 793 F.2d 457 (2d Cir.1986); Riggins v. Board of Regents, 790 F.2d 707, 711-12 (8th Cir.1986)); see Hudson v. Palmer, 468 U.S. 517, 533 (1984)(involved a prison inmate section 1983 lawsuit against a prison guard and held that an unauthorized intentional deprivation of property by a state employee does not constitute a violation of the procedural requirements of the Due Process Clause if a meaningful postdeprivation remedy for the loss is available; extending a previous holding concerning negligent deprivations to intentional deprivations of property).

In Alvin, a tenured university professor and two pharmaceutical companies that he operated brought a civil action alleging, among other claims, violations of due process resulting from denial of the benefits of tenure – and ultimately severance of his tenure and transfer to another school within the university – as part of an effort to punish him for his entrepreneurial

activity which competed with university-related commercial activities.  <u>Alvin</u>, 227 F.3d at 110.

The issues on appeal focused on the plaintiff's compliance with the university grievance process.

<u>Id.</u>  The plaintiff argued that he followed the grievance procedures laid out in the faculty

handbook, but was never afforded a hearing.  <u>Id.</u>  The district court granted summary judgment in

favor of defendants on the section 1983 procedural due process claim, concluding that the

plaintiff had not demonstrated that he had been deprived of a property interest.  <u>Id.</u> at 111.

 The United States Court of Appeals for the Third Circuit did not reach that issue, but

affirmed the district court's grant of summary judgment in favor of defendants, holding instead

that the plaintiff could not make out a procedural due process violation because he had not taken

advantage of the processes available to him, and had not shown them to be patently inadequate.

<u>Id.</u> at 111, 116-19.

 The court of appeals explained that this requirement that a plaintiff take advantage of

processes made available to assert a claim of denial of procedural due process should be

distinguished from exhaustion requirements that exist in other contexts.  <u>See id.</u>  The plaintiff in

<u>Alvin</u> appeared to the court of appeals to conflate the two, and contended, as an alternative to his

claim that he did attempt to use the available procedures, that he need not go through the

processes available because of the general rule that there is no exhaustion requirement for section

1983 claims.  <u>Id.</u> (citing <u>Patsy v. Board of Regents of Florida</u>, 457 U.S. 496, 516 (1982); <u>Hohe v.</u>

<u>Casey</u>, 956 F.2d 399, 408 (3d Cir.1992)).  The court of appeals rejected this argument:

> However, exhaustion *simpliciter* is analytically distinct from the
> requirement that the harm alleged has occurred. Under the
> jurisprudence, a procedural due process violation cannot have
> occurred when the governmental actor provides apparently
> adequate procedural remedies and the plaintiff has not availed

12

himself of those remedies.

Id. (citing Zinerman, 494 U.S. at 126).  The court of appeals held that applying these principles to the plaintiff's case in Alvin, and viewing the facts in the light most favorable to the plaintiff in that case, the plaintiff did not avail himself of the procedures provided by the defendant university because he did not follow the university regulations regarding the use of the grievance procedure.  Id.

In this case too, defendants argue that plaintiffs failed to avail themselves of the available post-deprivation administrative procedures.  Defendants point out that the Pennsylvania legislature has provided a process for customers to follow concerning the termination of utility service.  See 66 PA. CONS. STAT. §§1401 et seq.  Section 1410 provides for the filing of a complaint with the Public Utility Commission (the "PUC").  66 PA. CONS. STAT. §1410.  Prior to filing a complaint, the statute requires the customers to first contact the public utility to resolve the problem.  66 PA. CONS. STAT. §1410(1)("The commission shall accept complaints only from customers who affirm that they have first contacted the public utility for the purpose of resolving the problem about which the customer wishes to file a complaint.  If the customer has not contacted the public utility, the commission shall direct the customer to the public utility.").

Plaintiffs plead facts showing that, in addition to numerous unsuccessful attempts to contact the borough and Clark directly, they did contact the water company by telephone about the termination of water service at issue in this case.  Compl. ¶14.  Plaintiffs, however, plead facts showing that they did not avail themselves of the full extent of the grievance procedures available under Pennsylvania law, and in particular that they did not file a complaint with PUC as contemplated by the statute.  In their response in opposition to the borough defendants' motion to

dismiss (Doc. No. 5), plaintiffs "denied that aggrieved persons must avail themselves of whatever administrative framework exists before complaining of a denial of procedural due process. . . ." Pl.'s Resp. ¶3; see also id. at ¶21-22 (concerning plaintiffs' First Amendment claim: "Merely because the Defendants allege that a Pennsylvania Public Utilities Commission complaint could provide a suitable or meaningful post-deprivation remedy does not obligate your Plaintiffs to pursue an administrative remedy for a problem that is judicial in nature. . . .").[7]

Plaintiffs further asserted that defendants were required to institute appropriate warning notices before utility services were terminated and that plaintiffs pleaded that they did not do so. See Compl. ¶20. The briefing on the motion to dismiss, however, includes at least two termination notices apparently sent to plaintiffs concerning the property at issue. See Plaintiffs' Praecipe for Inclusion of Pertinent Exhibits (Doc. No. 6), Ex. 6 (April 12, 2006 Notice); Water Company's Mem. In Support of Mot. (Doc. No. 15), Ex. A (April 19, 2005 Notice). One of these notices predates the January 6, 2006 termination of water service at issue in this lawsuit. Both of these notices explained a procedure to challenge the termination which contemplates grievance procedures including a hearing. See id. These notices identically related that water service will be terminated "because of non-payment of sewage fees pursuant to ordinance." Id.

---

[7] The court may consider the factual averments in plaintiffs' responses and the exhibits incorporated by plaintiffs by reference in deciding the motion to dismiss because "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, [and] items appearing in the record of the case . . . may be considered by the district court without converting the motion into one for summary judgment." 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 at 376, 382-92 (3d ed. 2004). Specifically, without converting the motion into a motion for summary judgment, the court may consider, among other things, "documents which are attached to or submitted with the complaint." Pryor v. National Collegiate Athletic Ass'n, 288 F.3d 548, 560 (3d Cir. 2002); see U.S. Express Lines Ltd. v. Higgins, 281 F.3d 383, 388 (3d Cir. 2002).

These exhibits, which can be considered in ruling on a motion to dismiss without converting it into a motion for summary judgment, demonstrate that plaintiffs had some notice prior to the termination that water service would be terminated.

Under the relevant jurisprudence, a procedural due process violation cannot have occurred when the governmental actor provides apparently adequate procedural remedies and the plaintiff has not availed himself of those remedies.  The court, under Alvin, does not even reach the questions whether plaintiffs, who allege they were deprived of water service without due process of law, were deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of "life, liberty, or property," and whether (2) the procedures available to plaintiffs did not provide "due process of law.  See Alvin, 227 F.3d at 111 (although district court granted summary judgment because it found that the plaintiff had not been deprived of a property interest, and focused largely on the question whether the alleged incidents comprised such a significant erosion of the incidents of his tenure that he was deprived of a property interest, the court of appeals did not reach "this difficult (and interesting) question, however, because, whether or not Alvin has alleged a property deprivation, he has failed to adduce evidence that the defendants infringed upon whatever property right he possessed without due process of law.")

In this case, plaintiffs do not seriously dispute the adequacy of the existing state-law remedies themselves.  Plaintiffs do make vague allegations that there is a history of problems with utility service at the location in question, and in particular of problems between Gagliardi and some of the defendants.  See Compl. ¶21-22, 25.  Plaintiffs further allege that the termination was done in part in retaliation for the discovery ruling in the state lawsuit, which could be

understood as an oblique allegation that there is some bias or inadequacy in the proceedings as applied to plaintiffs.  The court of appeals in <u>Alvin</u>, however, rejected a similar argument that futility of proceedings as applied to a particular plaintiff, or allegations of bias, generally relieve a plaintiff of the threshold requirement for making out a procedural due process claim that the plaintiff must first take advantage of existing processes.  227 F.3d at 118-19.

> When access to procedure is absolutely blocked or there is evidence that the procedures are a sham, the plaintiff need not pursue them to state a due process claim. . . . However, since Alvin never invoked the second part of the processes available to him, which appear facially adequate, we will not hold that this step would have been unavailing (in procedure, if not in substance), absent concrete evidence supporting such a contention.

<u>Id.</u> at 118 (internal citations omitted). The court of appeals in <u>Alvin</u> discussed similar holdings in other decisions in which plaintiffs attempted to make a procedural due process claim charging that bias has infected a review of the deprivation without using all of the procedures available to them.  <u>Id.</u> at 119.  The court of appeals held, however, viewing the evidence in a light most favorable to Alvin, that "there is simply insufficient evidence that the formal hearing would not be held in a fair and impartial manner."  <u>Id.</u>  The court of appeals made clear:

> The Constitution does not require perfection at every stage of a process; . . . Alvin has not used all the processes available, and he cannot convert his difficulties with quickly triggering the informal process into a contention that the entire process, which he has not yet used, is biased.

<u>Id.</u> (internal citations omitted).  This argument, though not clearly articulated by plaintiffs, would also be unavailing in this case.[8]

---

[8]Although <u>Alvin</u> was resolved at the summary judgment stage and this case is being addressed at the motion to dismiss stage, the reasoning in <u>Alvin</u> still applies to plaintiffs in this case.  <u>See</u> <u>Jefferson</u>, 90 F.3d at 1296 ("In fact, where the plaintiff "chooses to plead particulars,

Plaintiffs here plead facts showing, similar to the plaintiff in Alvin, that they did not take advantage of the existing processes made available under state law to challenge the termination of water service. The court, therefore, finds that plaintiffs cannot state a procedural due process claim against any defendant.  The court will dismiss this claim with prejudice.

**B. The Substantive Due Process Claim**

Plaintiffs allege that defendants violated Vangelder's substantive due process rights guaranteed by the Fourteenth Amendment because depriving her of water shocks the conscience. Compl. ¶39.  Defendants argue in their motions to dismiss that plaintiffs cannot state a claim for a substantive due process violation because substantive due process protections apply to federal protected rights and the right to water is not such a right.

The Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property without due process of law."  U.S. CONST. amend. XIV.  "To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest."  County Concrete Corp. v. Town of Roxbury, 442 F.3d 159, 165 (3d Cir. 2006)(quoting Taylor Inv. Ltd. v. Upper Darby Twp., 983 F.2d 1285, 1292 (3d Cir. 1993))(internal quotations omitted).  "To prevail on a substantive due process claim challenging a state actor's conduct, 'a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies.'"  Hill v. Borough of Kutztown, 455 F.3d 225, 235 n.12 (3d Cir. 2006) (quoting Nicholas v. Pennsylvania State Univ., 227 F.3d 133, 139-40 (3d Cir.2000) (Alito, J.) (quotation marks and

and they show that he has no claim, then he is out of luck – he has pleaded himself out of court.").

17

citation omitted))(emphasis added).

> Whether a property interest is protected for purposes of substantive
> due process is a question that is not answered by reference to state
> law.  Rather, for a property interest to be protected for purposes of
> substantive due process, it must be "fundamental" under the United
> States Constitution.

Id. (citing Nicholas, 227 F.3d at 142-143) (internal citations omitted).  The United States Court

of Appeals for the Third Circuit has explicitly held that the provision of water and sewer

services, whether by a municipality or private utility company, is not a federally protected right.

Ransom v. Marazzo, 848 F.2d 398, 412 (3d Cir. 1988).  In Ransom, a class of Philadelphia

residents to whom water and sewer service was denied unless they paid the delinquent service

charges incurred, but not paid, by the prior customers of water services at their residences sued

the City of Philadelphia for, among other things, a denial of due process.  Id. at 400.  The district

court granted the City's motion to dismiss the plaintiff's amended complaint.  Id.  The court of

appeals affirmed and held that the state and local policies of denying service until charges for

services rendered are satisfied was constitutional.  Id. at 401.

Concerning the plaintiffs' substantive due process claim at issue in that decision –

"seeking nothing less than a ruling that the practice and policy of conditioning water and sewer

service on the satisfaction of pre-existing charges result in an unconstitutional deprivation of

property regardless of the procedural safeguards installed," – the court of appeals rejected

plaintiffs' reliance on a district court opinion affirmed without opinion, Koger v. Guarino, 412

F.Supp. 1375 (E.D.Pa. 1976), aff'd, 549 F.2d 795 (3d Cir. 1977), and determined that

"[s]ubstantive due process refers to and protects federal rights."  Id. at 411.  **"The provision of**

**water and sewer services, whether by a municipality or by a private utility company, is not,**

**however, a federally protected right."**  Id. at 412 (citing Koger, 412 F.Supp. at 1386)

(emphasis added).

> The legal fact that, once a municipality (or, for that matter, a
> private utility company) establishes a utility for its citizens, a
> citizen's expectation of receiving that service rises to the level of a
> property interest cognizable under the Due Process Clause . . .
> merely brings that expectation within the compass of the
> Fourteenth Amendment's procedural protections. . . . It does not
> transform that expectation into a substantive guarantee against the
> state in any circumstance.

Id. (internal citations omitted).  The court of appeals in Ransom, therefore, "reject[ed] the claim

that conditioning the receipt of water and sewer service on the satisfaction of past due charges for

services rendered to the applicant's residence raises the question of a substantive due process

deprivation."  Id.

This holding that there is no substantive guarantee to utility service that is enforceable

under a claim brought pursuant to the Fourteenth Amendment's substantive due process

guarantee equally applies here.[9]  The court, therefore, finds that plaintiffs cannot state a

substantive due process claim against any defendant.  The court will dismiss this claim with

prejudice.

---

[9]Plaintiffs assert that denial of water service to Vangelder "shocks the conscience."
Compl. ¶39.  This language suggests that plaintiffs, who are *pro se*, may be seeking to assert a
substantive due process claim under the "state-created danger doctrine" of substantive due
process under which a plaintiff must prove "(1) the harm ultimately caused was foreseeable and
fairly direct; (2) the state actor acted in willful disregard for the safety of the plaintiff; (3) there
existed some relationship between the state and the plaintiff; (4) the state actors used their
authority to create an opportunity that otherwise would not have existed for the [harm] to occur."
Estate of Smith v. Marasco, 430 F.3d 140, 153 (3d Cir. 2005) (citing Mark v. Borough of
Hatboro, 51 F.3d 1137, 1152 (3d Cir.1995).  Case law addressing state-created danger invokes
the "shocks the conscience standard."  Plaintiffs, however, have alleged no facts in support of
that kind of claim and have made no arguments in support of that kind of claim.  Indeed,
plaintiffs pleaded some facts showing that they cannot state a claim under this doctrine.

**C. The Equal Protection Claim**

Plaintiffs allege that defendants have violated their rights under the Equal Protection Clause of the Fourteenth Amendment. Compl. ¶36.  Defendants argue that plaintiffs cannot state a claim. "A plaintiff stating a claim under the Equal Protection Clause must allege that he has been treated differently because of his membership in a suspect class or his exercise of a fundamental right, or that he has been treated differently from similarly-situated others and that this differential treatment was not rationally related to a legitimate state interest." Young v. New Sewickley Twp., 60 Fed.Appx. 263, 267 (3d Cir. 2005)(unpublished)(citing City of Cleburne v. Cleburne Living Center, 473 U.S. 432, (1985)).

As to Vangelder, plaintiffs allege that she is a resident alien of Korean ancestry.  This assertion on its own, however, is not sufficient to state a claim under the Equal Protection Clause of the Fourteenth Amendment.  Plaintiffs here have alleged nothing other than her status as a resident alien of Korean ancestry as a basis for her equal protection claim.  "A § 1983 complaint need only satisfy the liberal notice pleading standard of Federal Rule of Civil Procedure 8(a)." Young, 60 Fed.Appx. at 265 (citing Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir.2005)). "Nonetheless, a district court is not required to credit a 'bald assertion' when deciding a motion to dismiss under this liberal notice pleading standard, and the plaintiff cannot use allegations of civil rights violations that amount to nothing more than 'conclusory, boilerplate language' to show that he may be entitled to relief under § 1983." Id. (citing Evancho, 423 F.3d at 354-55).[10]

_____

[10] "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." Young v. New Sewickley Twp., 60 Fed.Appx. 263, 267 (3d Cir. 2005)(unpublished) (citing Alston v. Parker, 363 F.3d 229, 235 (3d Cir.2004)). "Moreover, the district court must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend." Id. "Accordingly, even

As to Gagliardi, in plaintiffs' response to borough defendants' motion to dismiss, plaintiffs argue that the actions of the defendants were intended to impact Gagliardi as a "class of one." See Pl.'s Resp. ¶11 (responding to municipal defendants' argument that plaintiffs have failed to identify a municipal policy or custom which resulted in the violation of rights under the supervisory liability standard set forth in City of Canton v. Harris, 489 U.S. 378, 385 (1989)).[11] The "class of one" theory asserted but not argued in any detail by plaintiff was announced in Village of Willowbrook v. Olech, 528 U.S. 562(2000) (per curiam).  Hill v. Borough of Kutztown, 455 F.3d 225, 238 (3d Cir. 2006).  "According to that theory, a plaintiff states a claim for violation of the Equal Protection clause when he 'alleges that he has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" Id.  (quoting Olech, 528 U.S. at 564).

The United States Court of Appeals recently in Hill discussed the "class of one" theory:

Our court has not had the opportunity to consider the equal

─────────────────────────

when a plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he has leave to amend the complaint within a set period of time." Id. (citations omitted).  "The district court may dismiss the action if the plaintiff does not submit an amended pleading within that time, or if the plaintiff files notice with the district court of his intent to stand on the complaint." Id. (citing Shane v. Fauver, 213 F.3d 113, 116 (3d Cir.2000); Borelli v. City of Reading, 532 F.2d 950, 951 n.1 (3d Cir.1976)).

[11]The Supreme Court Canton announced the degree of fault required to hold a public entity liable under a theory of supervisory liability for failure to train public employees. Canton,489 U.S. at 388-92.  The Supreme Court held that only where a public entity's failure to train its employees in a relevant respect reflects a deliberate indifference to the constitutional rights of its inhabitants can such a claim yield liability.  Canton,489 U.S. at 392; see Sample v. Diecks, 885 F.2d 1099 (3d Cir. 1999)(interpreting Canton).  "We hold today that the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact."  Canton, 498 at 388 (emphasis added).

21

> protection "class of one" theory at any length. From the text of
> <u>Olech</u> itself, however, it is clear that, at the very least, to state a
> claim under that theory, a plaintiff must allege that (1) the defendant
> treated him differently from others similarly situated, (2) the
> defendant did so intentionally, and (3) there was no rational basis
> for the difference in treatment.

<u>Id.</u>  In <u>Hill</u>, the court of appeals determined that the equal protection "class of one" claim by the

plaintiff in that case, a professional engineer who worked as a borough manager until he alleged

he was constructively discharged and harassed by the mayor of Kutztown, failed because the

plaintiff did not allege the existence of similarly situated individuals – i.e., other borough

managers – who the mayor treated differently than he treated the plaintiff.  <u>Id.</u>  (citing <u>Levenstein

v. Salafsky</u>, 414 F.3d 767, 776 (7th Cir.2005)).

Similarly here, as to both the putative Korean ancestry claim and the "class of one" claim,

plaintiffs have not alleged that similarly situated individuals were treated differently and that

there was no rational basis for the difference in treatment.  The court, therefore, finds that

plaintiffs have failed to state an Equal Protection claim against all defendants.  The court will

dismiss these claims without prejudice to plaintiffs' ability to raise them in an amended

complaint if plaintiffs can make more than bald conclusions.  Plaintiffs are reminded that if they

file an amended complaint, they are bound by the requirements of Rule 8 of the Federal Rules of

Civil Procedure and must allege facts sufficient to outline the elements of their claims or to

permit inferences to be drawn that these elements exist, and may not rely upon bald assertions or

legal conclusions.

**D. The Right to Petition First Amendment Claim**

Plaintiffs allege that defendants obstructed plaintiffs' right to petition guaranteed by the

First Amendment to the United States Constitution by not providing them with pretermination notice concerning the termination of utility service. Compl. ¶29. Defendants argue that under both forms of right to petition recognized by courts – interference with the access to the courts and retaliation for engaging in protected conduct – plaintiffs failed to state a claim. As to access to the courts, plaintiffs plead no facts showing that their access to the courts was denied. To the contrary, plaintiffs were able to bring this lawsuit without obstacle, and plaintiffs plead facts in their complaint showing that they are in the process, or were in the process, or seeking judicial redress in state court for related issues. Based upon these facts, plaintiffs cannot state a claim for violation of right to petition predicated on access to the courts.

As to retaliation, in the facts plead, and in their response to the borough defendants motion, plaintiffs suggest a claim for retaliation based upon the discovery ruling obtained in the state court action. See Compl. ¶12; Pl.'s Resp. ¶12 (responding to qualified immunity argument by Clark). As a threshold matter, the water company argues that it was not a party to the state court litigation and, therefore, plaintiff cannot state a claim of retaliation against it based upon these facts. The borough, however, was a named defendant in the state court litigation.

Retaliation for the exercise of constitutionally-protected rights is itself a violation of rights secured by the Constitution actionable under section 1983. White v. Napoleon, 897 F.2d 103, 111-12 (3d Cir. 1990). The Supreme Court has explicitly held that an individual has a viable claim against the government when he is able to prove that the government took action against him in retaliation for his exercise of First Amendment Rights." Anderson v. Davila, 125 F.3d 148, 159 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274 (1977)). It is well established that a plaintiff's retaliation claim is subject to a three-step,

burden shifting methodology.  Ambrose v. Twp. of Robinson, 303 F.3d 488, 493 (3d Cir. 2002)

(citing Bd. of County Comm'rs v. Umbehr, 518 U.S. 669, 675 (1996)).

> First, a plaintiff must show that his conduct was constitutionally
> protected.  Second, he must show that his protected activity was a
> substantial or motivating factor in the alleged retaliatory action.
> Finally, the defendant may defeat the plaintiff's case "by showing
> that it would have taken the same action even in the absence of the
> protected conduct."

Id. (quoting Bd. of County Comm'rs v. Umbehr, 518 U.S. 669, 675 (1996)); see Hill v. Borough

of Kutztown 455 F.3d 225, 241 (3d Cir. 2006); Hill v. City of Scranton, 411 F.3d 118, 125 (3d

Cir. 2005)("Scranton").

In Scranton, the United States Court of Appeals for the Third Circuit addressed a lawsuit

brought by police officers alleging that the city terminated them not because they failed to

comply with a residency ordinance but because they exercised their First Amendment right to

petition the government by previously suing the city.  Id. at 125.  In that case, as here, it cannot

be seriously contested that the act in question – the filing of grievance lawsuit against

government officials – is protected activity.  The question whether this lawsuit was a "substantial

or motivating factor" in the borough defendants' decision to direct the utility service be

terminated, however, and whether defendants could show that they would have taken the same

action even in the absence of Gagliardi's lawsuit and the discovery ruling, are case-specific, fact-

specific issues.  See id. at 125 n.7.

Plaintiffs have plead facts showing that they engaged in protected activity.  They have

asserted only the barest allegations in support of any retaliatory motive by the borough

defendants.  The court, however, at this early stage in the litigation, cannot determine as

24

defendants would like that plaintiffs have failed to state a claim and amendments would be futile. The court, therefore, finds that plaintiffs have failed to state a First Amendment claim against all defendants based upon the facts alleged thus far.  The court will dismiss this claim without prejudice to plaintiffs' rights to file an amended complaint that complies with Rule 8 of the Federal Rules of Civil Procedure.  Plaintiffs are reminded that if they file an amended complaint, they must allege facts sufficient to outline the elements of their claims or to permit inferences to be drawn that these elements exist, and may not rely upon bald assertions or legal conclusions.

**E. The Unreasonable Seizure Fourth Amendment Claim**

Plaintiffs argue that by terminating water service, defendants violated plaintiffs' rights to be free from unreasonable seizures under the Fourth Amendment to the United States Constitution.  "The Fourth Amendment, made applicable to the States by the Fourteenth [Amendment] . . . provides in pertinent part that the 'right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . .'" Soldal v. Cook County, Ill., 506 U.S. 56, 61 (1992) (quoting U.S. CONST. amend. XIV).  "A 'seizure' of property, we have explained, occurs when 'there is some meaningful interference with an individual's possessory interests in that property.'" Id. (quoting United States v. Jacobsen, 466 U.S. 109, 113 (1984)); see Gardner v. McGroarty, 68 Fed.Appx. 307, 311 (3d Cir. 2003)(same)(unpublished).  The Fourth Amendment protects the people from unreasonable searches and seizures of "their persons, houses, papers, and effects." Id. at 62 (quoting U.S. CONST. amend. XIV).  It, however, "does not protect possessory interests in all kinds of property."  Id. at 63 n.7 (citing Oliver v. United States, 466 U.S. 170, 176-77 (1984))(emphasis added).

25

Defendants argue that utility service cannot reasonably be construed as a personal effect, and contend that they can locate no decisions to the contrary.  In their response to the borough defendants' motion, plaintiffs argue that defendants' view of the Fourth Amendment is too narrow, and that the Fourth Amendment secures the right of the people "to be secure in their **persons**" and that the Bill of Rights, including the Fourth Amendment, is a "collection of declaratory and restrictive phrases enunciated to expressly limit the prerogatives of government oppressors, such as the Defendants and their corporate allies."  See Pl.'s Resp. ¶29 (emphasis in original).

The court finds that, based upon the facts plead, even drawing all inferences in plaintiffs favor, plaintiffs have not stated a claim that their persons were seized, nor have they stated a claim that their personal effects were seized.  As the Supreme Court made clear in Soldal: The Fourth Amendment "does not protect possessory interests in all kinds of property."  506 U.S. at 63 n.7 (citing Oliver v. United States, 466 U.S. 170, 176-77 (1984)).  Access to utility service cannot reasonably be construed as a "personal effect" which is protected by the Fourth Amendment.  The court has located no federal case law supporting such a view, although there are decisions in which plaintiffs challenged the termination of utility service subject to the procedural due process protections of the Fourteenth Amendment.  See, e.g., Ransom v. Marazzo, 848 F.2d 398, 412 (3d Cir. 1988); but see Gardner v. McGroarty, 68 Fed.Appx. 307, 311 (3d Cir. 2003)(unpublished) (holding that the search and seizure of an apartment building without a warrant, the posting of it as unfit for habitation, the evacuation of the tenants, and the discontinuation of utility services did not constitute an unlawful search and seizure under the Fourth Amendment).

26

The court, therefore, finds that based upon the facts plead by plaintiffs that plaintiffs cannot state a Fourth Amendment illegal seizure claim against any defendant.  The court will dismiss this claim with prejudice.

**F. The Freedom of Contract and To Be Free From Impairment of Contracts Claim**

Plaintiffs allege that defendants violated plaintiffs' rights to freedom of contract and to be free from impairment of contracts secured by Article I, Section 10, Clause 1 of the United States Constitution, which provides in relevant part: "No State shall . . . pass . . . any . . . law impairing the obligation of contracts. . . ."  U.S. CONST. art. I, § 10, cl. 1.  Defendants argue that to assert a viable claim under the contracts clause, plaintiffs must allege that a change in the law operates as a substantial impairment of a contractual relationship.  See General Motors Corp. v. Romein, 503 U.S. 181, 186 (1992).  The Supreme Court explained contracts clause claims in General Motors as follows:

> Generally, we first ask whether the change in state law has "operated as a substantial impairment of a contractual relationship." . . . . This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial.

Id. (internal citations omitted).  While "[g]overnment regulations that substantially diminish contractual rights may create an unconstitutional impairment of the contract," Callaway Community Hosp. v. Sullivan, 784 F.Supp. 693, 699 (W.D.Mo. 1992) (citing Thorpe v. Housing Auth. of Durham, 393 U.S. 268, 278-79 (1969)), "[t]he contract clause does not bar all impairments of contract, but, instead, bars only unreasonable, significant impairments."  Id. (citing United States Trust Co. of N.Y. v. New Jersey, 431 U.S. 1, 21, 25 (1977)).

27

The analysis set forth in Yellow Cab Co. v. City of Chicago, 3 F.Supp.2d 919, 922-23 (N.D.Ill. 1998), is instructive.  "A contracting party may invoke the protections of the Contract Clause when there is an exercise of legislative power."  Id. at 922 (citing Arriaga v. Members of Bd. of Regents, 825 F.Supp. 1, 4 (D.Mass.1992)). "By its terms, the Contract Clause applies only to state constitutions, constitutional amendments, statutes, ordinances or any instrumentality of state legislated or delegated authority." Id. (citations omitted). "However, courts generally recognize that the Contract Clause also applies to the actions of state subdivisions, including city councils.  Id. (citing Horwitz-Matthews, Inc. v. City of Chicago, 78 F.3d 1248, 1251 (7th Cir.1996)). "Where a city 'acts through ordinances, then its contractual approvals and repudiations will be embodied in ordinances.'" Id. (quoting Horwitz-Matthews, 78 F.3d  at 1251). "Consequently, a city ordinance may trigger the protections of the Contract Clause."  Id.

Unconstitutional impairment of contracts must be distinguished from ordinary breach of contract.  "The protections of the Contract Clause, however, only apply to impairments of contract rights; the Contract Clause does not protect private parties from governmental breaches of contract."  Id.  "The Supreme Court has distinguished between an unconstitutional impairment of a contract obligation and a breach of contract for purposes of claims brought under the Contract Clause."  Id.  (citing Hays v. Port of Seattle, 251 U.S. 233, 237 (1920)).  The Court recognized that "[t]he distinguishing characteristic between a constitutional impairment and a contractual breach is whether the non-breaching party has an available remedy."  Id.  Therefore,

> [i]f a state exercises legislative power in a way that eliminates the availability of a remedy or action for damages by the non-breaching party, the state has impaired the contract. In contrast, if some legislative action announces the state's refusal to perform its contractual obligation, the state has simply breached

28

the contract.

Id. (noting that the United States Court of Appeals for the Seventh Circuit held that a state or local law unconstitutionally impairs a contract only when the law provides the state or one of its subdivisions with a complete defense to a breach of contract suit, thereby preventing the other party from obtaining damages for breach of contract).

Plaintiffs make some allegations suggesting a contract for utility service, and these allegations are sufficient to meet the liberal pleading requirements of Federal Rule of Civil Procedure 8 with respect to the existence of a contract.  Plaintiffs, however, have not alleged (1) the existence of any ordinance passed by the borough defendants; (2) that any ordinance has impaired any contract that may exist; or (3) that any ordinance has substantially impaired any contract.  With respect to the water company, plaintiffs cannot state a claim for impairment of contracts because the water company is a private company.

The court, therefore, finds that plaintiffs did not meet the pleading requirement of Rule 8 of the Federal Rules of Civil Procedure and failed to state an impairment of contracts claim against any defendant.  The court will dismiss this claim without prejudice with respect to the borough defendants and with prejudice with respect to the water company.  Plaintiffs are reminded that if they file an amended complaint with respect to the claims dismissed without prejudice, they are bound by the requirements of Rule 8 of the Federal Rules of Civil Procedure and must allege facts sufficient to outline the elements of their claims or to permit inferences to be drawn that these elements exist, and may not rely upon bald assertions or legal conclusions.

**G. The Reserved and Unenumerated Rights Under the Ninth Amendment Claim**

Plaintiffs allege that defendants violated their reserved and unenumerated rights under the Ninth Amendment to the United States Constitution. The Ninth Amendment provides that "[t]he enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." U.S. CONST. amend. IX. Defendants argue plaintiffs cannot state a claim under the Ninth Amendment because the Ninth Amendment does not independently secure any substantive constitutional rights, but rather has been interpreted to be a rule of construction. See Warcloud v. Horn, 1998 WL 126917 (E.D.Pa. 1998) ("The Ninth Amendment has never been recognized as independently securing any substantive constitutional rights." Id. (quoting Robinson v. Vaughn, 1993 WL 451495, at * 6 (E.D. Pa. 1993)(quoting Strandberg v. City of Helena, 791 F.2d 744, 748-49 (9th Cir.1986))) (internal quotations omitted). Indeed, this court has previously held that the Ninth Amendment "*states but a rule of construction*." Nicolette v. Caruso  315 F.Supp.2d 710, 718 (W.D.Pa.,2003)(Conti, J.)(quoting THE CONSTITUTION OF THE UNITED STATES OF AMERICA: ANALYSIS AND INTERPRETATION 1412 (Johnny Killiam, ed., 1987) (emphasis added in original)). "As such, the Ninth Amendment standing alone does not confer substantive rights for purposes of pursuing a constitutional claim." Id. (citations omitted). "Specifically, section 1983 civil rights claims premised on the Ninth Amendment 'must fail because there are no constitutional rights secured by that amendment.'" Id. (quoting Charles v. Brown, 495 F.Supp. 862 (D.C.Ala.1980)).

The court, therefore, finds that plaintiffs cannot state a Ninth Amendment claim against any defendant. The court will dismiss this claim with prejudice.

**II.  Fair Debt Collection Act Claims Under 15 U.S.C. § 1692**

The Fair Debt Collection Act ("FDCA"), 15 U.S.C. § 1692, "provides a remedy for consumers who have been subjected to abusive, deceptive or unfair debt collection practices by debt collectors."  Piper v. Portnoff Law Associates, Ltd., 396 F.3d 227, 232 (3d Cir. 2005) (citing Pollice v. Nat'l Tax Funding, L.P., 225 F.3d 379, 400 (3d Cir.2000); Zimmerman v. HBO Affiliate Group, 834 F.2d 1163, 1167 (3d Cir.1987)).  "The threshold requirement of the FDCPA is that the prohibited practices are used in an attempt to collect a 'debt.'"  Id. (internal quotations omitted); see 15 U.S.C. §§ 1692e-f.

A "debt" is defined under the FDCA as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a(5). "Consumer" is defined as "any natural person obligated or allegedly obligated to pay any debt." 15 U.S.C. § 1692a(3).  "Debt collector" is defined as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6).

Plaintiffs do not plead facts in their complaint showing that they owe a debt to the defendants or that the defendants acted as "debt collectors" under the meaning set forth in the statute.[12]  This lawsuit is based upon the act of shutting off water service to plaintiffs, not upon

---

[12]Indeed, supplemental filings demonstrate that plaintiffs dispute any arrearage on the account in question.

31

efforts by the borough defendants or the water company to collect a debt.

The court, therefore, finds that the facts plead show that plaintiffs cannot state a FDCA claim against any defendant.  The court will dismiss this claim with prejudice.

### III.  Federal Criminal Statutes for Mail Fraud and Federal Fraud and False Statements

The federal mail fraud statute provides for the imposition of criminal liability for using the mail to execute or attempt to execute a fraudulent scheme.  See 18 U.S.C. § 1341.[13]  The federal fraud and false statement statute, 18 U.S.C. § 1001, provides for the imposition of criminal liability for the knowing and willful making of material false, fictitious, or fraudulent

---

[13]Section 1341 provides:

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

18 U.S.C. § 1341.

statements or representations in any matter within the jurisdiction of the executive, legislative, or judicial branch of the federal government.  <u>See</u> 18 U.S.C. § 1001.[14]

---

[14] Section 1001 provides:

(a) Except as otherwise provided in this section, whoever, in any matter within the jurisdiction of the executive, legislative, or judicial branch of the Government of the United States, knowingly and willfully–

(1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact;
(2) makes any materially false, fictitious, or fraudulent statement or representation; or
(3) makes or uses any false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry;

shall be fined under this title, imprisoned not more than 5 years or, if the offense involves international or domestic terrorism (as defined in section 2331), imprisoned not more than 8 years, or both. If the matter relates to an offense under chapter 109A, 109B, 110, or 117, or section 1591, then the term of imprisonment imposed under this section shall be not more than 8 years.

(b) Subsection (a) does not apply to a party to a judicial proceeding, or that party's counsel, for statements, representations, writings or documents submitted by such party or counsel to a judge or magistrate in that proceeding.

(c) With respect to any matter within the jurisdiction of the legislative branch, subsection (a) shall apply only to--

(1) administrative matters, including a claim for payment, a matter related to the procurement of property or services, personnel or employment practices, or support services, or a document required by law, rule, or regulation to be submitted to the Congress or any office or officer within the legislative branch; or
(2) any investigation or review, conducted pursuant to the authority of any committee, subcommittee, commission or office of the Congress, consistent with applicable rules of the House or Senate.

18 U.S.C. § 1001.

Defendants argue that it is well-established that there is no private cause of action under the federal criminal statutes for mail fraud or false statements.  The plain text of these statutes reinforces this argument because nowhere does the text of either statute provide for a private cause of action.  See Clements v. Chapman,  2006 WL 1739826, *3 (10th Cir. 2006)(citing generally Diamond v. Charles, 476 U.S. 54, 64-65 (1986) (noting that private citizens cannot compel enforcement of criminal law).[15]

In plaintiffs' response to borough defendants' motion to dismiss, plaintiffs acknowledge that there is no private cause of action for enforcing these criminal statutes.  See Pl.'s Resp. ¶29. Plaintiffs state instead that these two federal criminal statutes "are pleaded primarily to indicate the bad faith underlying the actions of the governmental Defendants and the individual offenses alleged do not themselves constitute sources for a private cause of action."  Id.

The court, therefore, finds that based upon the facts plead by plaintiffs, plaintiffs cannot state a claim under these federal criminal statutes against any defendant.  The court will dismiss these claims with prejudice.


**IV. State Law Claims Under the Pennsylvania Constitution, Contract and Tort Law**

Where, as here, dismissal of all federal claims is warranted, this court may decline to exercise supplemental jurisdiction over pendent state law claims.  See 28 U.S.C. 1367(c)(3);

---

[15]In Clements, the United States Court of Appeals made clear that "Section 1983 cannot 'fill the gap' for what is clearly absent from the federal criminal statutes cited by [the plaintiff], i.e., the existence of a private right of action to enforce those statutes." Id. (citing Blessing v. Freestone, 520 U.S. 329, 340 (1997)).

34

Queen City Pizza, 124 F.3d at 444; Stechney v. Perry, 101 F.3d 925, 939 (3d Cir. 1996); Growth

Horizons, Inc. V. Delaware County, Pa., 983 F.3d 1277, 1284-85 (3d Cir. 1993).  This case is at

the motion to dismiss stage and significant resources of the parties and the judiciary have not yet

been expended.  Plaintiffs will have leave to file an amended complaint asserting federal claims

that have been dismissed without prejudice so long as plaintiffs in good faith meet the pleading

standard of Rule 8 of the Federal Rules of Civil Procedure with respect to those claims.

Plaintiffs if they choose to file an amended complaint may avail themselves of this forum at that

time, or plaintiffs may avail themselves of the appropriate state forum to resolve their state law

claims.

     Under these circumstances, the court can find no compelling reason to retain jurisdiction

over plaintiffs' state law claims at this time and no prejudice to plaintiffs from their dismissal.

The court declines to exercise supplemental jurisdiction over plaintiffs' state-law claims –  which

include multiple claims under various sections of Article I of the Pennsylvania Constitution as

well as other state law claims.  Those claims are dismissed without prejudice.  See 28 U.S.C. §

1367; Queen City Pizza, 124 F.3d at 444; Stehney, 101 F.3d at 939; Growth Horizons, 983 F.2d

at 1284-85 (3d Cir. 1993).

### *Conclusion*

     **AND NOW**, this 28th day of September 2006, upon consideration of defendants' motions

to dismiss plaintiffs' complaint (Doc. Nos. 3, 10), **IT IS HEREBY ORDERED** defendants

motions are **GRANTED**.

     Plaintiffs' Fourteenth Amendment procedural due process claim and substantive due

process claim, Fourth Amendment unreasonable seizure claim, Ninth Amendment reserved and

unenumerated rights claim, FDCA claim, and federal criminal statutory claims for mail fraud and

false statements are **DISMISSED WITH PREJUDICE** as to all defendants.

Plaintiffs' Article I, Section 10, Clause 1 freedom of contract claim is **DISMISSED**

**WITH PREJUDICE** as to the water company.

Plaintiffs' Fourteenth Amendment equal protection claim, First Amendment right to

petition claim, and Pennsylvania state law claims are **DISMISSED WITHOUT PREJUDICE**

as to all defendants.

Plaintiffs' Article I, Section 10, Clause 1 freedom of contract claims are **DISMISSED**

**WITHOUT PREJUDICE** as to the borough defendants.

**IT IS FURTHER ORDERED** that plaintiffs shall have **thirty (30) days** from the date of

the entry of this order to file an amended complaint making curative amendments; provided that

plaintiffs can meet the standards of Rule 8 of the Federal Rules of Civil Procedure.  Plaintiffs if

they file an amended complaint must allege facts sufficient to outline the elements of their claims

or to permit inferences to be drawn that these elements exist and may not rely upon mere bald

assertions or legal conclusions.  Plaintiffs are reminded of the requirements of Rule 11 of the

Federal Rules of Civil Procedure.

**IT IS FURTHER ORDERED** that all other pending motions, including plaintiffs'

motion for joinder of additional parties (Doc. No. 11), plaintiffs' motion for declaratory relief

(Doc. No. 17), plaintiffs' amended motion for joinder of additional parties (Doc. No. 20), and

defendants' motion to strike motion for joinder and motion for declaratory relief (Doc. No. 23),

are **HEREBY DENIED AS MOOT**.

By the court:


$\underline{\text{ /s/ Joy Flowers Conti     }}$
Joy Flowers Conti
United States District Judge


cc:     Counsel of Record